# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM C. PASSMORE, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIV. ACT. NO. 1:23-cv-128-TFM-N |
| VERTEX ENERGY, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| PHIL LEVSON, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIV. ACT. NO. 1:23-cv-197-KD-M |
| VERTEX ENERGY, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC BENDER and NADAR MISRI, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV. ACT. NO. 4:23-cv-02145-LHR |
| VERTEX ENERGY, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Now pending before the Court are multiple motions to include motions to consolidate cases, motions for appointment of lead plaintiff, and motions for appointment of lead counsel. *See Passmore v. Vertex Energy, Inc., et al.*, Civ. Act. No. 1:23-cv-128-TFM (S.D. Ala.), Docs. 21, 23; *Bender, et al. v. Vertex Energy Inc., et al.*, Civ. Act. No. 4:23-cv-2145 (S.D. Tex.), Doc. 3.[1]

After a review of the various issues, the Court determined that it was appropriate to address consolidation and venue before considering the motions for appointment of lead plaintiff and lead counsel. After a careful review of the briefing related to consolidation and venue, the Court determines that the cases should be consolidated and transferred to the Southern District of Texas – Houston division. This written opinion provides the basis for that determination. As the case will be before the Southern District of Texas, the motions for appointment of lead plaintiff and lead counsel remain pending for resolution by the Southern District of Texas.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

There are three sets of cases at issue. All three cases are putative securities class action lawsuits involving alleged violations of the Securities Exchange Act of 1934 ("the Exchange Act") against Defendants Vertex Energy, Inc. ("Vertex"), Benjamin P. Cowart ("Cowart"), and Chris Carlson ("Carlson). Vertex is an energy company with its headquarters in Houston, Texas and owns and operates a refinery in Mobile, Alabama. Cowart is the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of Vertex ("the Board") during the alleged class period. Carlson served as the Chief Financial Officer ("CFO") throughout the class period.

The first case was filed on April 13, 2023 in the Southern District of Alabama by William C. Passmore. *See Passmore v. Vertex Energy, Inc., et al.*, Civ. Act. No. 1:23-cv-128-TFM (S.D.

---

[1] The Court notes that when it uses page references to documents in this case, it is referring to the PDF page number and not the page number at the bottom of the document. Several documents have tables of contents or other leading pages which change the pagination. Therefore, to be consistent the Court elected to use the PDF page number.

Ala.) (hereinafter "*Passmore*"). The second case was filed on April 13, 2023 in the Southern District of Alabama by Phil Levson. *See Levson v. Vertex Energy, Inc.*, Civ. Act. No. 1:23-cv-197-KD (S.D. Ala.) (hereinafter "*Levson*"). The third case was filed on June 12, 2023 in the Southern District of Texas by Plaintiffs Eric Bender and Nader Misri. *See Bender, et al. v. Vertex Energy Inc., et al.*, Civ. Act. No. 4:23-cv-2145 (S.D. Tex.) (hereinafter "*Bender*"). All three cases are governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA govern the appointment of Lead Plaintiff and Lead Counsel. Under the PSLRA, any member of the putative class may seek appointment as Lead Plaintiff within 60 days after the publication of the notice of the first-filed case. The Notice was published on April 13, 2023 which made Lead Plaintiff motions due by June 12, 2023. *See Passmore*, Doc. 23-3.

On the June 12, 2023 motion deadline, two groups of movants filed motions seeking appointment of Lead Plaintiff in the Alabama cases (*Passmore* and *Levson*). *See* Docs. 21, 23. On that same date, the *Bender* action as filed in the S.D. Texas. Instead of filing their motion for appointment of Lead Plaintiff in the Alabama actions, he filed the motion only in the Texas action. *See Bender* Doc. 3. Rather, the *Bender* movants belatedly notified the first-filed court of their case and motion on June 26, 2023 accompanied by a memorandum in opposition to the competing lead plaintiff motions. *See Passmore* Doc. 29. Subsequently the *Passmore* and *Levson* plaintiffs filed motions to intervene in the Texas action to protect their interests. *See Bender* Docs. 9, 13.

On June 13, 2023, the pending motions in *Levson* were referred to the undersigned as *Passmore* was considered the first-filed. *See* Dkt entry dated 06/13/2023. On July 20, 2023, the same motions in *Bender* were also referred to the undersigned. *See Bender* Doc. 27. On August 1, 2023, the undersigned conducted a status conference to discuss the timeline for the motions and identification of issues. The Court also ordered the parties to submit supplemental briefing on any venue issues. *See Passmore* Doc. 52; *Levson* Doc. 36; *Bender* Doc. 31.

On August 18, 2023, all parties submitted their supplemental briefs on venue. *See Passmore* Doc. 53 (Defendants); Doc. 54 (*Bender* plaintiffs); Doc. 55 (*Passmore* plaintiff); Doc. 56 (*Levson* plaintiffs). The Defendants and *Bender* plaintiffs argues for transfer of the consolidated cases to the Southern District of Texas while the *Passmore* and *Levson* plaintiffs argues for the first-filed location in the Southern District of Alabama. Each party then filed their responses to the supplemental briefs on August 25, 2023. *See Passmore* Doc. 57 (*Bender* plaintiffs); Doc. 58 (Defendants); Doc. 59 (*Passmore* plaintiffs); Doc. 60 (*Levson* plaintiffs).

The questions of consolidation and venue are fully briefed and ripe for resolution. The Court will address each in turn.

## II.    CONSOLIDATION

At the August 1, 2023 status conference, all plaintiffs agreed that consolidation of the actions would be appropriate – they simply did not agree as to the remaining issues of lead plaintiff, lead counsel, and venue. Defendants take a neutral position on consolidation, lead plaintiff, and lead counsel. Despite the lack of opposition, the Court has performed its own independent review and determined that consolidation is appropriate.

Rule 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). The PSLRA further refers to consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed." 15 U.S.C. § 78u-4(a)(3)(B).

In reviewing the three complaints, it is clear that they involve a common question of law or fact and assert substantially the same claim or claims arising under federal securities laws. Therefore, The Court agrees with the plaintiffs that consolidation is appropriate.

The Court will now move onto the determination of venue as there are two actions that were brought in the Southern District of Alabama and one brought in the Southern District of Texas. The Court does so because that then naturally determines whether the undersigned will handle the motion for appointment of lead plaintiff and lead counsel or if it would be handled by the judge assigned in the Southern District of Texas.

### III.   STANDARD OF REVIEW - VENUE

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The Supreme Court has explained that '[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *S. Mills, Inc. v. Nunes*, 746 F.3d 1223, 1226 (11th Cir. 2014) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). "Trial judges are permitted a broad discretion in weighing the conflicting arguments as to venue." *England v. ITT Thomas Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) (citing *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981), *cert. denied*, 456 U.S. 918, 102 S. Ct. 1775, 72 L. Ed. 2d 178 (1982)); *see also Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988) (also indicating the decision to transfer venue under § 1404(a) is within a trial court's sound discretion). "[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *see also Hanby v. Shell Oil Co.* 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001) ("The moving party bears the burden of demonstrating why the forum should be changed and the burden is a strong one as to proving that the convenience factors clearly favor such a change."); *In re Triton Ltd. Securities Litigation*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999)

("the defendants must carry a strong burden to prove that [the convenience] factors clearly favor such a change").

### IV.  DISCUSSION AND ANALYSIS

28 U.S.C. § 1391 provides the guidance on venue in general.  It states:

A civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b). However, this case is not governed solely by the general venue statute.  Rather, the Securities Exchange Act has its own venue statute which provides jurisdiction in a district court is determined as follows:

Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business.

15 U.S.C. § 78aa.  In the case at hand, the Court determines that both the Southern District of Alabama and the Southern District of Texas are proper and appropriate venues because Defendant is an inhabitant and transacts business in both locations.

Therefore, the Court looks to whether one or the other is a *more* appropriate venue for these consolidated actions.  To do so, the Court must weigh certain factors to determine whether to transfer a matter:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance

of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990)).

The Fifth Circuit essentially uses the same analysis. Courts generally balance both private convenience factors and public interest factors, none of which are given dispositive weight. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citations omitted) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). Private factors often include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen AG*, 371 F.3d at 203; *see also In re TikTok*, 85 F.4th at 358 (reciting all elements together). Public interest factors often include: (1) administrative difficulties caused by court congestion; (2) local interest in adjudicating local disputes; (3) unfairness of burdening citizens in an unrelated forum with jury duty; and (4) avoidance of unnecessary problems in conflict of laws. *Id*.

While the factors between the Fifth and Eleventh Circuits are not identical in their recitation, they do essentially use the same balancing factors in deciding a § 1404 transfer of venue. Additionally, the factors listed above are not exclusive or exhaustive nor is any particular factor dispositive in weight. *See* 15 Charles A. Wright, *Federal Practice & Procedure* §3851 (4th ed. Apr. 2023 update) ("It is important to remember, though, that a single factor is rarely determinative on a transfer motion."). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1307

(N.D. Ala. 2003) (citation omitted); *see also England*, 856 F.2d at 1520 ("Trial judges are permitted a broad discretion in weighing the conflicting arguments as to venue").

The Court will look at the factors and any other matters the Court considers relevant. Additionally, as the *Passmore* case was first-filed and the Southern District of Alabama is located in the Eleventh Circuit, for the most part, the Court will rely upon the factors identified in this Circuit. The factors need not be addressed in any particular order, so the Court will begin with the weight accorded to the plaintiffs' choice of forum because of the three separate cases.

## A.    The Weight Accorded a Plaintiff's Choice of Forum

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell*, 650 F.2d at 616). Additionally, the Court does take into consideration the "first-filed rule" which "provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). Additionally, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel*, 430 F.3d at 1135.

Without a doubt, *Passmore* was the first-filed action. Under the PSLRA, its filing was the triggering event for the deadlines. Additionally, two groups of movant plaintiffs filed their cases here in the Southern District of Alabama. *See Passmore* and *Levson* complaints. On the deadline to file the motions for appointment of lead plaintiff and lead counsel, the *Bender* plaintiffs failed to appear in the Alabama cases as anticipated by the PSLRA. Rather, in an apparent strategic move of procedural gamesmanship, the *Bender* plaintiffs initiated their own action on the June 12, 2023 deadline without notice to this Court despite their awareness of the *Passmore* case. *See*

*Bender* Doc. 4 (referencing *Passmore*, its April 13, 2023 complaint, the PSLRA notice, and 60-day deadline). Additionally, the *Bender* plaintiffs' counsel essentially plagiarized their complaint from the one filed in *Passmore*. In fact, a comparison shows that they are virtually identical (including footnotes, paragraph numbers, headers, emphasis, and wording of the allegations).

Rather than follow the PSLRA's clear instructions to seek appointment as Lead Plaintiff in the Alabama Actions, the *Bender* action is simply a last-minute copy-cat complaint filed on the deadline in a different district in obvious attempt to end-run around *Passmore*. Therefore, the *Bender* preferences play little role in this Court's determination and the *Passmore* and *Levson* plaintiffs receive a higher priority as to the question of venue.[2,3] Moreover, the Court is loathe to reward the *Bender* procedural gamesmanship. Therefore, the Court finds that this factor weighs in favor of maintaining the consolidated cases in the Southern District of Alabama given the choice of both *Passmore* (and *Levson*) to file the cases here and the application of the first-filed rule.

However, the first-filed rule is not absolute. "*In absence of compelling circumstances*, the court initially seized of the controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169 (11th Cir. 1982) (emphasis added); *see also Manuel*, 430 F.3d at 1135 (quoting *Merrill Lynch* on compelling circumstances). Moreover, a

---

[2] This is not to express a determination on the question of lead plaintiff, but rather simply to note that there is no deference to the *Bender* plaintiffs' choice of venue. As aptly noted by the *Levson* plaintiffs in their brief (Doc. 56 at 10-11), "the issue of venue is and distinct from the Lead Plaintiff appointment process set forth in the PSLRA" and even if the Court transfers the case to Texas, that determination does not bolster the merits of the *Bender* plaintiffs' motion for appointment of lead plaintiff and lead counsel. Though it does not particularly engender the appointment of lead counsel when the *Bender* lawyers play such procedural games and copies another firm's work verbatim at the earliest stage of the process. However, that is a question for another day and, based on this venue determination, for another court. Further, the undersigned notes that this comment is directed at the original *Bender* counsel and not the local Alabama counsel who appeared in *Passmore* to represent the *Bender* plaintiffs.

[3] *Levson* was filed on May 26, 2023. However, while there is significant overlap in the *Passmore* and *Levson* complaints, the *Levson* Complaint is not a copy-cat complaint and has distinctions.

plaintiff's choice in forum is not dispositive on its own. *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283 (11th Cir. 2009). This factor is less important when the case at issue is a securities-related class action. *See e.g., Koster v. American Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("where there are hundreds of potential plaintiffs. . .the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened") (securities class action). Yet, "[e]ven if the chosen forum is entitled to less deference, the court must still find that other factors clearly outweigh the chosen forum." *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1359 (M.D. Ala. 1998).

Therefore, the Court also looks to whether compelling circumstances exist by analyzing the remaining transfer factors.

**B.      The Convenience of the Parties**

In the case at hand, Defendants and the *Bender* plaintiffs argue for the Southern District of Texas while the *Passmore* and *Levson* plaintiffs argue for the Southern District of Alabama. However, simply shifting the inconvenience of litigating in an out-of-state forum from one party to another is not a valid reason to transfer a case. Further, as this is filed as a proposed securities class action, there is more at work here than simply the convenience of certain parties.

Defendants Cowart[4] and Carlson both reside in Houston, Texas. Further, Vertex is headquartered in Houston, Texas, though it does operate the Mobile, Alabama refinery discussed in the various complaints. Yet out of the various plaintiffs, only Passmore is in Alabama. The *Levson* movant plaintiffs (Guillermo Marti and Frank J. Zeman) are in Costa Rica and Florida. The *Bender* plaintiffs are located in California. Therefore, only Passmore can claim to be

---

[4] Passmore alleges that Cowart owns a home and lot in Fairhope, Alabama which is within the Southern District of Alabama. *See* Doc. 55 at 10. However, Passmore does not allege that it is Cowart's primary residence or otherwise dispute Defendant Cowart's assertion that he is a citizen and resident of Houston, Texas.

inconvenienced if the case is transferred to Houston, Texas. Yet, because this is a purported class action, that weight is essentially eliminated when considering that in a security class action case, the class will be nationwide. Therefore, there is no particular weight afforded to *any* location of the Plaintiffs while there is significant weight afforded to the Defendants in that Houston, Texas is clearly a more convenient location.

For travel purposes, Houston is a large city serviced by two major airport hubs: George Bush Intercontinental (IAH – which is a hub for United airlines) and William P. Hobby (HOU which is a hub for Southwest airlines). Both airports also service numerous international flights. Mobile, Alabama has much smaller airport options – Mobile International Airport (BFM) and Mobile Regional Airport (MOB)[5] – with fewer direct flights throughout the nation and even less international flights. The Court must agree that travel to and from Houston, Texas is more convenient when considering a possible nationwide class.

On balance, this factor significantly supports venue in the Southern District of Texas because the Defendants are located there while the proposed nationwide class will likely involve the bulk of the United States and even several international locations.

## C.    The Locus of Operative Facts

The various parties disagree as to where the locus of operative facts lies in this case. Yet, the complaints make it clear that, as in any securities-fraud action, plaintiffs' claims are based on

---

[5] However, for the Defendants' purpose, the Court must note that United airlines has several direct flights to/from IAH to MOB every day. Therefore, neither the *Bender* plaintiffs nor the Defendants can argue that Mobile is some geographically isolated area that is cut-off from the world as we know it. It is also common knowledge among locals that Pensacola airport (PNS) is regularly used as an additional convenient airport, has additional flight options to include Southwest airlines, and is right at a one-hour drive from downtown Mobile. Given the extensive size of the Houston metro-area and the well-known automobile traffic (and the lack thereof in the Mobile Gulf-Coast area), the one-hour drive from Pensacola is hardly a burden. Rather, the Court can agree that Houston has *more* direct flight options from *other* locations than the direct flights into MOB.

defendants' alleged misrepresentations and omissions.

"Misrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received." *In re Nematron Corp.*, 30 F.Supp.2d 397, 404 (S.D.N.Y. 1998) (citation and internal quotation marks omitted); *see also Blass v. Capital Int'l Sec. Group*, Civ. Act. No. 99-CV-5738, 2001 WL 301137, at *5, 2001 U.S. Dist. LEXIS 3504, at *16-17 (E.D.N.Y. Mar. 23, 2001) (quoting *Nematron*). The refinery in question is located in Mobile, Alabama. But, the crux of the misrepresentations and omissions all came from the Vertex headquarters. Passmore argue that (1) Vertex' primary operations occur at the Mobile, Alabama refinery, (2) he purchased his stock while residing in Alabama, (3) the Mobile refinery generates the vast majority of Vertex' 2022 revenue, (4) the Mobile refinery has the most Vertex employees over other locations, (5) the alleged false and misleading statements made to shareholders involve the Mobile refinery, and (6) the refinery is owned by Vertex Refining Alabama LLC, a wholly owned subsidiary of Vertex and Cowart is the President and CEO of the subsidiary and the subsidiary is the sole named borrower of the loan purchasing the refinery. *Passmore* Doc. 55 at 13-14. Yet, none of these note the location from where the misrepresentations/omissions were transmitted as opposed to received – it is clear that they were sent from the headquarters (Houston) while they were received in Alabama (and a variety of other locations as evidenced by the variety of locations of the existing named plaintiffs). The *Levson* plaintiffs initially provide no analysis on the topic (focusing instead on first-filed and gamesmanship), but in their response to the supplemental venue briefing, they finally address the matter and argue in evaluating the truth or falsity of the statements, it necessarily implicates events that occurred in Mobile. While it may *relate* to the refinery and its operations in Mobile, they still miss the mark on the location from which the alleged statements were released. Even if there are some statements from Mobile, it seems apparent that the decisions would have been made by the parent company and its officers

and anything from the subsidiary would still be subordinate to the headquarters location. *Cf. Blass*, 2001 WL 301137, at \*5, 2001 U.S. Dist. LEXIS 3504, at \*17 (transferring securities-fraud class action to Florida in part because misrepresentations allegedly made in New York "pale in magnitude to the misrepresentations and omissions attributable to defendants' alleged activities in Florida"); *but see Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer LP*, 2020 WL 1888950, at \*6 (E.D. Penn. Apr. 16, 2020) ("Though it is true that some of Defendants' alleged false statements and misrepresentations originated from their headquarters in Dallas, it is also the case that much of the alleged conduct underlying the purportedly false statements would have taken place in Pennsylvania. Moreover, Mariner East—the project that is the focus of Plaintiff's allegation—is owned and operated by Sunoco Logistics Partners L.P. and its affiliates, a subsidiary of Energy Transfer that is headquartered in Pennsylvania.")

The Court recognizes that some precipitating events involving the putative class representatives' individual claims may have and did occur in the Southern District of Alabama and the refinery and subsidiary are located here. Yet, it seems equally clear to the Court that the Vertex headquarters is the location from which the decisions were made and from which the statements were issued and transmitted.

Ultimately, the Court finds that this factor slightly favors transfer to the Southern District of Texas.

**D.    The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof**

The location of relevant documents and the relative ease of access to sources of proof is a factor that also weighs in favor of transferring venue to the Southern District of Texas. Plaintiffs have failed to identify with specificity any documents that are located in the Southern District of Alabama and relevant to this case. Defendants, on the other hand, have pointed out that because

this is a securities lawsuit, the bulk of discoverable documents will come from Vertex and its corporate headquarters in Houston. Defendants do acknowledge that "in today's electronic age" much of the discovery can be accessed from anywhere and easily transmitted by electronic means. *Passmore* Doc. 53 at 15 (quoting *Dusek v. JP Morgan Chase & Co.*, Civ. Act. No. 2:14-cv-184, 2015 WL 12819406, at *2 (M.D. Fla. Jan. 16, 2015) ("The relevant documents seem to be located in New York, where the corporate headquarters are located, but document location in today's electronic age seems to have decreasing significance.")). Defendants attempt to dodge this factor by arguing that "this would not apply to any hardcopy document or documents that are saved locally and not on a server or other electronic means that would be accessible from anywhere." *Passmore* Doc. 53 at 15. Yet, much like Plaintiffs lack of specificity, Defendants also lack any details as to this supposition.

On balance, this factor is neutral to both venues requested by the parties.

E.      **The Convenience of the Witnesses**

The convenience of witnesses is one of the most important factors in the Section 1404(a) analysis. *See, e.g., Carroll v. Texas Instruments, Inc.*, 910 F. Supp.2d 1331, 1334 (M.D. Ala. 2012) (convenience of nonparty witnesses is "sometimes dubbed the single most important factor in determining whether the transfer of venue is proper"); *In re Hanger Orthopedic Group, Inc.*, 418 F. Supp.2d 164, 168 (E.D.N.Y. 2006) ("The convenience of non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of forum."); *Salinas v. O'Reilly Auto, Inc.*, 358 F. Supp.2d 569, 572 (N.D. Tex. 2005) ("The convenience of witnesses is oft-considered the most important factor in the transfer analysis. The convenience of non-party witnesses is paramount. The defendant seeking transfer must specifically identify the key witnesses and outline the substance of their testimony.") (internal citations and quotations omitted.); *Electronic Transaction Network v. Katz*, 734 F. Supp. 492, 501-

Page 14 of 20

02 (N.D. Ga. 1989) ("The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses."); *J.I. Kislak Mortgage Corp. v. Connecticut Bank and Trust Co.*, 604 F. Supp. 346, 347 (S.D. Fla. 1985) (requiring a "clear-cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court").

To satisfy this factor, the movant must specify the key witnesses to be called, their expected testimony, and the inconvenience to them should the action remain in the plaintiff's chosen forum. *see also Internap Corp. v. Noction, Inc.*, 114 F. Supp.3d 1336 (N.D. Ga. 2015) ("Witness convenience is one of the most important factors in evaluating a motion to transfer ..., with a focus on key witnesses.) (quotations omitted). Even within this witnesses identification, there is a further distinction between party-witnesses and non-party witnesses. *State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994). "[I]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Id*. (citations omitted); *see also Allegheny Cnty. Employee's Ret. Sys. v. Energy Transfer LP*, Civ. Act. No. 20-200, 2020 WL 1888950, at *6, 2020 U.S. Dist. LEXIS 66867, at *18 (E.D. Penn. Apr. 16, 2020) ("Therefore "it is the convenience of non-party witnesses ... that is the more important factor and is accorded greater weight" given that they are less likely to be willing to travel beyond their home forum in order to testify.") (citations omitted). Despite the distinctions between party and non-party witnesses, the Court notes that is a question of emphasis and does not render the convenience of party witnesses irrelevant. Rather, it is a question of weight.

In the case at hand, the Court notes that the party-witnesses receive little weight because from the Plaintiffs perspective, this is a proposed class action, which means the plaintiffs may be scattered nationally and internationally. From the Defendants' perspective, the party-witnesses

are readily available as employees of Vertex and, much as the *Passmore* Plaintiff noted in his brief, pretrial discovery including depositions can be held in Houston – either voluntarily or through Court order.  Therefore, the Court turns to the non-party witnesses.

The Court notes that none of the Plaintiffs provided specific witnesses in the Southern District of Alabama beyond Passmore and the generic "employees of the refinery"-type statements. However, while not naming names, the Defendants do identify several specific categories of non-party witnesses: "(a) the intermediation counter-party with whom Vertex entered into the intermediation agreement; (b) the seller of the refinery (Shell); (c) the financial professionals Vertex worked with and relied on in connection with issuing financial projections and estimates; and (d) non-party witnesses who attended the relevant earnings calls." *Passmore* Doc. 53 at 14. The Court agrees that it appears likely that these non-party witnesses would be in the Houston area.  Much like the convenience of the parties, the Court does note that Houston is an easier location for travel purposes for ones located elsewhere besides Houston and Mobile.  But also, many of those witnesses likely reside in the Houston-area.  Transferring the case to Houston addresses the inconvenience of those parties in monetary travel costs, missing work, and time away from their families (which has far more value than money).

Therefore, on balance, the factor addressing the convenience – as it relates to non-party witnesses – favors venue in the Southern District of Texas.

**F.    The Availability of Process to Compel the Attendance of Unwilling Witnesses**

When initiated by the Securities and Exchange Commission ("SEC"), the Securities Exchange Act allows all parties to compel the attendance of witnesses from any place within the United States.  15 U.S.C. § 78aa ("In any action or proceeding instituted by the Commission under this chapter in a United States district court for any judicial district, a subpoena issued to compel the attendance of a witness or the production of documents or tangible things (or both) at a hearing

or trial may be served at any place within the United States.").  However, this is not an action initiated by the SEC.  Rather, it is initiated by individuals as a putative class.  Therefore, the Court must look to standard means of compulsory process.

A court may subpoena a witness to attend trial, hearing, or deposition only: (1) within 100 miles of where the person resides, is employed, or regularly transacts business in person or (2) within the state where the person resides, is employed, or regularly transacts business in person if the person is a party or party's officer or is commanded to attend a trial and would not incur substantial expense. FED. R. CIV. P. 45(c)(1).  For other discovery, a subpoena may command production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.  FED. R. CIV. P. 45(c)(2).

At this stage, all parties argue in generalities – which is not surprising given that there has not yet been any discovery and no forecasting of unwilling witnesses for either location.  Moreover, there are no specifics shown that would establish a witness may not appear voluntarily or by technological means in either Houston or Mobile.  Discovery is no longer solely a "live and in-person" construct, but rather has developed into a process that can and does involve videoconferencing and other technological means.  Further this is a civil case and many courts have become more open-minded as to alternate means of appearance for both time and cost savings.  Given that no party can offer specifics as to this issue, at this stage, the Court cannot find that the balance tips one way or the other.

Therefore, this factor is neutral as to both venues at this stage in the litigation.

**G.      The Relative Means of the Parties**

Only Passmore asserts that there is a distinction in the means between the parties.  *See* Doc. 55 at 16.  However, the Court agrees with the remaining plaintiffs and defendants, that in this case,

it is not a traditional individual plaintiff versus the corporation in a hypothetical "David vs Goliath" analogy. Rather, this case involves is a putative class action where there are several well-known national law firms representing the various plaintiffs. The firms are well-resourced and appear to be pursuing the class action on a contingency-fee basis. Further, none of the plaintiffs or their counsel argue that they are unable to pursue the case or travel due to financial restraints or otherwise. Rather, the assertion by Passmore falls more into a convenience argument as opposed to a means argument.

On balance, this factor is neutral as to either venue.

## H.      A Forum's Familiarity with the Governing Law

Most parties agree that the forums' familiarity with the governing law does not weigh in favor of, or against, either venue. The *Bender* plaintiffs attempt to argue that because the Southern District of Texas has had more securities actions, it is a more appropriate venue. However, the Court disagrees. The general statistic cited by the *Bender* plaintiffs shows 133 filed in the entirety of the Southern District of Texas since 1996. The Southern District of Texas has seven (7) divisions and currently appears to have 29 district judges (17 active district judge supplemented by 12 senior status district judges and 2 vacancies). Additionally, a review of the court's history shows there were 7 additional judges who have retired. In 27 years (since 1996), one can hardly argue that makes any one of those judges a subject-matter expert. Rather, the position of the other two plaintiffs and Defendants is a far more tenable position. Specifically, that both federal courts are equally capable of applying the federal securities laws upon which the Plaintiffs base their claims. Therefore, this factor receives no weight and is neutral.

## I.      Trial Efficiency and the Interests of Justice

This final factor is a general catch-all. All parties cite to varying statistics on weigh load per judge, average time to case resolution, and average time from complaint to trial. Yet, those

Page 18 of 20

statistics take into consideration all kinds of cases and give little insight into the statistical analysis on purported class actions.

Next, both states (Texas and Alabama) would clearly have an interest in resolving matters which involve allegations of securities fraud. That said, the Court does find that Texas has a slight edge on the matter given that Vertex is a Texas resident corporation, and the individual defendants are citizens of the state. As noted in *Irwin v. Zila, Inc.*, 168 F. Supp.2d 1294 (M.D. Ala. 2001)

> Considerations of justice also point toward transferring the present matter to Arizona. Arizona has an interest in demanding that its resident corporations adhere to a level of protocol in conducting their business activities, especially when the alleged misdeeds took place within that forum. Certainly Alabama, too, has an interest in protecting its citizens from the fraudulent statements, but in an age where statements made in one forum can effect the market value of stocks nationwide, concerns of judicial economy need due consideration.

*Id.* at 1297. The presence of the corporate headquarters where the alleged misstatements would have been decided and made gives Texas more public interest than Alabama which is merely the home to the refinery discussed. Put differently, it is the statement that matters, not the refinery location. The statement would have been made by the corporate headquarters and not at a refinery. This is not a case involving a physical accident or safety issue at the refinery, but rather an allegation of misrepresentations which affected stock value.

Therefore, this factor weighs heavily in favor of the Southern District of Texas.

**Summary**

Balancing all the above factors and engaging in an individualized consideration of convenience and fairness, the Court is of the opinion that these consolidated cases should be transferred pursuant to 28 U.S.C. § 1404(a) to the Houston Division of the Southern District of Texas.

## V.   CONCLUSION

Based on the foregoing, the request to consolidate these three cases is **GRANTED**.

Further, after a careful review, the Court determines that while both the Southern District of Alabama and the Southern District of Texas are appropriate venues, the Southern District of Texas is the more appropriate location for this proposed class action.  Therefore, the two cases filed in Alabama will be transferred to the Southern District of Alabama – Houston Division.  The Clerk of Court for the Southern District of Alabama is **DIRECTED** to effectuate the transfer.

The Clerk of Court for the Southern District of Texas is directed to consider *Passmore v. Vertex Energy, Inc., et al.* and *Levson v. Vertex Energy, Inc.* as directly related to *Bender, et al. v. Vertex Energy Inc., et al.*, Civ. Act. No. 4:23-cv-2145 (S.D. Tex.) which is already pending in the district.

The motions for appointment of lead plaintiff and lead counsel along with any administrative matters on scheduling shall remain for resolution by the Southern District of Texas.

**DONE** and **ORDERED** this 24th day of January 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE